**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| BARBARA HARRISON,<br>by her next friend and guardian,<br>MARGUERITE HARRISON,<br><br>        Plaintiff,<br><br>v.<br><br>CECILE YOUNG, in her official capacity as<br>THE ACTING EXECUTIVE<br>COMMISSIONER, TEXAS HEALTH AND<br>HUMAN SERVICES COMMISSION,<br><br>        Defendant. | Cause No._____ |

 **PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND**
**PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ...................................................................................................i

**TABLE OF AUTHORITIES** ........................................................................................ ii

**I. BACKGROUND FACTS** .........................................................................................2

   A.   Barbara's Medical Condition Is Such That, If Institutionalized, She Will Die. .............. 2

   B.   Defendant Administers and Supervises the Texas Medicaid Program ........................... 4

   C.   HHSC Has Denied Requested Funding Levels for Barbara's Home-Based Medicaid Waiver Services Despite the Catastrophic Consequences of That Action. .................... 5

   D.   HHSC Constructively Denied Barbara a Fair Hearing to Contest Its Denial of the Funding Necessary to Keep Her Alive ........................................................................ 7

**II. ARGUMENT** ...........................................................................................................8

   A.   There Is a Substantial Likelihood That Barbara Will Prevail on the Merits................... 9

       1.   Plaintiff Will Likely Succeed in Showing That Defendant Has Violated the ADA and Section 504 of the Rehabilitation Act of 1973. ................................................. 9

       2.   Plaintiff Will Likely Succeed in Showing That Defendants Have Failed to Afford Her Due Process. ......................................................................................... 13

   B.   There Is a Substantial Threat That Barbara Harrison Will Suffer Immediate Irreparable Injury If the Injunction Is Not Granted. ...................................................................... 15

   C.   The Threatened Harm to Barbara Outweighs the Threatened Harm the Injunction May Cause HHSC. .......................................................................................................... 16

   D.   The Granting of a Preliminary Injunction Will Not Disserve the Public Interest.......... 16

**III. CONCLUSION**....................................................................................................17

**CERTIFICATE OF SERVICE** ................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Association of Taxicab Operators, USA v. City of Dallas*,
760 F. Supp. 693 (N.D. Tex. 2010)………………………………………………….…..8

*Blue Bell Creameries, L.P. v. Denali Co., LLC*,
2008 WL 2965655 (S.D. Tex. July 31, 2008)……………………………………………..17

*Clark v. Prichard*,
812 F.2d 991 (5th Cir. 1987)………………………………………………………………8

*Entertainment and Sports Programming Network, Inc. v. Edinburg Community Hotel, Inc.*,
735 F. Supp. 1334 (S.D. Tex. 1986)………………………………….……………….……9

*Enyart v. National Conference of Bar Examiners, Inc.*,
630 F.3d 1153 (9th Cir. 2011)…………………………………………………………..17

*Grooms v. Maram*,
563 F. Supp. 2d 840 (N.D. Ill. 2008)……………………………………………...…11, 12

*Hamby v. Neel*,
368 F.3d 549 (6th Cir. 2004)………………………………………………………….…15

*Heather K. v. City of Mallard, Iowa*,
887 F. Supp. 1249 (N.D. Iowa 1995)………………………………………………………17

*Hooters, Inc. v. City of Texarkana, Tex.*,
897 F. Supp. 946 (E.D. Tex. 1995)………………………………………………………...9

*Janvey v, Alguire*,
647 F.3d 585 (5th Cir. 2011)………………………………………………………….....8

*Jonathan C. v. Hawkins*,
2006 U.S. Dist. Lexis 87792 (E.D. Tex. Dec. 5, 2006)…………………………………14, 15

*Knowles v. Horn*,
2010 WL 517591 (N.D. Tex. Feb. 10, 2010)……………………………………………*passim*

*Lakedreams v. Taylor*,
932 F.2d 1103 (5th Cir. 1991)…………………………………………………………...8

*Olmstead v. L.C. ex rel. Zimring*,
527 U.S. 581 (1999)………………………………………………………….…...9, 10

*Productos Carnic S.A. v. Central American Beef and Seafood Trading Co.*,
621 F.2d 683 (5th Cir. 1980)………………………………………………………………8

*Radaszewski v. Maram*,
383 F.3d 599 (7th Cir. 2004)……………………………………………………………12

*Radaszewski v. Maram*,
2008 WL 2097382 (N.D. Ill. March 26, 2008)……………………………………….....12

*Sak v. City of Aurelia, Iowa*,
832 F. Supp. 2d 1026 (N.D. Iowa 2011)……………………………………………..…..17

*State of Texas v. Seatrain Int'l, S.A.*,
518 F.2d 175 (5th Cir. 1975)………………………………………………………………8

*Wilson v. Thomas*,
2014 WL 7405462 (E.D.N.C. Dec. 23, 2014)…………………………………………17

## Statutes

29 U.S.C. § 794(a)……………………………………………………………..…*passim*

42 U.S.C. § 1396……………………………………………………………….....4, 7

42 U.S.C.  § 1396a(a)(3)………………………………………………………………14

42 U.S.C. § 1396n(c)(1) ………………………………………………………………..4

42 U.S.C. § 1396n(c)(3) ………………………………………………………………..4

42 U.S.C.  § 12132………………………………………………………………*passim*

Tex. Admin. Code § 353.2………………………………………………………7, 14

Tex. Admin. Code § 353.202………………………………………………………....7, 14

Tex. Admin. Code § 357.3………………………………………………………7, 14

General Appropriations Act, 85th Legislature, Regular Session, 2017, Special Provisions
Relating to All Health and Human Services Agencies, Section 23…………………………*passim*

## Rules and Regulations

28 C.F.R. § 35.130(d)………………………………………………………………9

28 C.F.R. § 41.51(d)………………………………………………………………..9

Fed. R. Civ. P. 65……………………………………………………………………1

Plaintiff Barbara Harrison ("Barbara") by her next friend and guardian Marguerite Harrison hereby moves the Court, pursuant to the provisions of Rule 65(a) and (b) of the Federal Rules of Civil Procedure, for a Temporary Restraining Order and Preliminary Injunction, enjoining Defendant Cecile Young, Acting Executive Commissioner of the Texas Health and Human Services Commission ("HHSC"), as well as Defendant's officers, agents, servants, employees, and attorneys, and any and all persons in active concert or participation with them, from declining to provide Barbara life-sustaining nursing services through the Home and Community-based Services ("HCS") Medicaid waiver program at a level necessary to keep her alive.

Barbara is a forty-two year old severely physically and intellectually disabled adult.  She requires twenty-four hour a day licensed nursing care coupled with minute by minute observation and supervision to survive.  Defendant has access to funds to provide the necessary care to Barbara at a group home in the community through a legislative enactment promoting the use of funds necessary for this purpose.  Defendant has, in fact, provided Barbara services in community homes for years.  Nevertheless, Defendant has declined now to provide the level of services to Barbara in her residential community group home necessary to keep her alive, despite the availability of general revenue (GR) funds the Texas legislature has made available precisely for this purpose. That is, the Texas legislature has set aside state GR funds to pay for the additional cost for care when HCS waiver costs exceed the waiver's cost cap applicable to the HCS program. Further, Defendant has provided neither Plaintiff nor her care provider with any information on how to access such GR funds, although Plaintiff has requested such access. Furthermore, Defendant has given Plaintiff no effective opportunity to appeal its decision through a fair hearing, as Plaintiff would not have the necessary funding during the pendency of

1

such an appeal to stay alive.  Defendant's actions towards Barbara constitute impermissible discrimination under the Americans with Disabilities Act and other applicable federal law and violate Barbara's due process rights.

Under applicable law (a) there is a substantial likelihood that Plaintiff will prevail on the merits; (b) Plaintiff will suffer immediate irreparable injury if the injunction is not granted; (c) the threatened harm to Plaintiff outweighs any conceivable threatened harm the injunction may cause Defendant; and (d) granting the preliminary injunction will not disserve the public interest.

Undersigned counsel certifies that he will give notice to the Defendant of this Motion directly after its filing by emailing, faxing, and overnight shipping both the Motion and the underlying Complaint to the individuals listed on the Certificate of Service.  Plaintiff is not able to post a bond or other security because her only income is $1,072.00 per month from Medicare disability.[1]  OVC ¶ 50.

# I.
# BACKGROUND FACTS

## A.    Barbara's Medical Condition Is Such That, If Institutionalized, She Will Die.

Barbara Harrison is a forty-two year old woman with severe disabilities.  OVC ¶¶ 1, 2. She has been medically diagnosed with, among other things, cerebral palsy, epilepsy, obstructive sleep apnea, severe dysphagia, gastrostomy tube dependence, scoliosis, and profound intellectual disability.  OVC ¶ 2; OVC Exs. A-F.  Barbara is also non-verbal and non-ambulatory, making it impossible for her to communicate any of her medical needs.  OVC ¶ 2; OVC Exs. A, B, C, D.

---

[1] Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") is supported by Plaintiff's Original Verified Complaint ("OVC"), simultaneously filed in this action, the exhibits to the OVC, and the exhibits contained in the Appendix to the Motion, which are incorporated into the Motion by reference.

Dr. Terry Hollingsworth, Barbara's primary care physician, has stated unequivocally in correspondence submitted to Defendant that moving Barbara to any nursing home without 24/7 LVN services "will expose Barbara to respiratory-related illness, will cause a further decline in her health and will carry an extreme risk of resulting in her death."  OVC Ex. A.  In fact, "Barbara requires LVN presence at all times to ensure that she does not aspirate and/or choke. Such aspiration and/or choking could potentially lead to death in minutes or could result in pneumonia which could itself be quickly fatal or could further compromise Barbara's respiratory system."  OVC Ex. A.

Barbara's other treating physicians unanimously agree.  For example, Dr. Eric Bryan Smith, Barbara's urologist, Dr. Lawrence Weprin, her Ear, Nose, and Throat Specialist, and Dr. Ben Kahn, her gastroenterologist, unequivocally confirmed the assertions made by Dr. Hollingsworth. OVC Exs. B, C, and D.

Furthermore, the nurses who provide Barbara with her daily care concur as well.  Glenna Hetherly, the LVN who provides care for Barbara asserts that "[f]or Barbara, LVN services are required one-on-one and 24/7, not only for hourly G-tube assessments but even more critically to provide frequent suctioning due to her high risk for aspirating and choking.  In other words without the availability of suctioning around the clock on an as needed basis, secretion build-up could potentially cause Barbara to die in a matter of minutes."  OVC Ex. E, ¶ 6.  Ms. Hetherly further states that "moving Barbara from her community home, where she currently resides and receives LVN services one-on-one and 24/7, to a nursing facility without one-on-one and 24/7 LVN services, will make her highly susceptible to aspiration, choking, infection, flu and other viruses—any of which puts Barbara's health and safety at extreme risk and increases her risk of death to an equally extreme level."  OVC Ex. E, ¶ 11.  The supervising RN, Kimberly Baca,

3

agrees on all counts.  OVC Ex. F.  Plaintiff's care provider submitted a plan of care to HHSC reflecting the need for this level of care.  OVC Ex. G.

Nevertheless, without any medical evidence to counter the dictates of Barbara's treating physicians and caregiving nurses, Defendant has declined to provide the funding Barbara needs to survive.  OVC ¶¶ 7-8; OVC Ex. H.

**B.      Defendant Administers and Supervises the Texas Medicaid Program**

Each State participating in the joint federal and state funded Medicaid program must submit a Medicaid plan to the Secretary of the United States Department of Health and Human Services for approval.  42 U.S.C. § 1396.  Texas has designated HHSC to administer and/or supervise the administration of the State's Medicaid plan.  OVC ¶ 25.

Through a federally-approved waiver, states have the option of covering home and community-based services for persons who would otherwise require institutional care that would be paid for by Medicaid.  42 U.S.C. § 1396n(c)(1).  OVC ¶ 26.  Under the waiver authority, the secretary of HHSC may grant waivers of specified requirements such as service limitations that are otherwise applicable to the State's Medicaid plan.  42 U.S.C. § 1396n(c)(3).  Medicaid home and community-based waiver programs enable states to provide the level of services a person would typically receive in an institutional setting in her or her home or some other community setting.  42 U.S.C. § 1396n(c)(1).

Defendant operates a home and community-based waiver program for Texans, such as Barbara, called HCS.  HCS provides supports and services to Medicaid recipients with physical or mental disabilities in the home and other community-based placements through a network of HCS provider organizations.  OVC ¶ 28.  Services available through the HCS waiver program include the life-sustaining licensed nursing services Barbara requires to survive.  OVC ¶ 28.

C.     **HHSC Has Denied Requested Funding Levels for Barbara's Home-Based Medicaid Waiver Services Despite the Catastrophic Consequences of That Action.**

HHSC has provided Barbara with Medicaid-funded services in community homes for years.  OVC ¶ 29.  The program currently serving Barbara, the HCS waiver program, has a cost cap.  OVC ¶ 30.

On or about April 23, 2018, medical professionals from Berry Family Services, Inc., a provider authorized by HHSC to provide HCS nursing services, determined that Barbara required twenty-four hour one-on-one care and that, in light of the complexities and risks involved, a licensed nurse must provide this care.  OVC ¶ 30.   The conclusions of these professionals were submitted in an Individual Service Plan (the "ISP") to HHSC in April 2018.  OVC ¶ 30.  The total annual cost for the requested twenty-four hour care was $214,111.29.  OVC ¶ 30.  The annual cost was over the cost cap by $45,496.37.  OVC ¶ 30.

Upon receiving the April 2018 ISP, HHSC requested additional information.  OVC ¶ 31.  On May 14, 2018, Berry Family Services professionals sent in an addendum along with documentation to justify the requested increase in nursing services.  OVC ¶ 30.

On May 29, 2018, Berry Family Services, Inc., submitted a new updated ISP over the cost ceiling and formally requested GR funds and information regarding next steps on how to seek access to such GR funds.  OVC ¶ 32, OVC Ex. G, Ex. B.[2]

HHSC has access to such supplemental state general revenue funds by virtue of General Appropriations Act, 85th Legislature, Regular Session, 2017, Special Provisions Relating to All Health and Human Services Agencies, Section 23 ("Section 23"), which provides in relevant part that HHSC may use state GR funds

> to pay for services if: (i) the cost of such services exceeds the individual cost limit
> specified in a medical assistance waiver program . . . ; (ii) federal financial participation

---

[2] "Ex." not preceded by "OVC" refers to an Exhibit attached to this Motion.

is not available to pay for such services; and (iii) the commission determines that: (a) the person's health and safety cannot be protected by the services provided within the individual cost limit established for the program; and (b) there is no other available living arrangement in which the person's health and safety can be protected at that time, as evidenced by: i) an assessment conducted by clinical staff of the commission; and ii) supporting documentation, including the person's medical and service records."  OVC Ex. I.

As there was and is no dispute that Section 23 factors (i), (ii), and (iii)(b)(ii) apply to Barbara, Plaintiff's care provider submitted a request for GR funds which should have prompted HHSC to direct its clinical staff to perform an assessment of Barbara pursuant to Section 23(b)(1)(iii)(b)(1).  However, instead of taking this step, HHSC ignored the request for GR funding and reduced funding for Barbara's care below the amount requested as necessary for her survival.  OVC ¶ 34, OVC Ex. H.  HHSC thus constructively denied the request for GR funding as well.

On May 23, 2018, counsel for Barbara participated in a conference call with an attorney for HHSC and an HHSC staff member specifically broaching the GR funding issue and indicating that Barbara would need such funding in light of her medical situation.  Exh. A, ¶ 4.  On June 27, 2018, counsel for Barbara sent an email communication to counsel for HHSC, reiterating Barbara's need for GR funding and attaching a draft of the Original Verified Complaint filed simultaneously with this filing, along with its exhibits.  Exh. A, ¶ 5.  Counsel for Barbara then conferred with counsel for HHSC on the afternoon of June 29, 2018, indicating a willingness to work with HHSC in resolving the situation without the necessity of litigation if HHSC could provide the temporary funding necessary to keep Barbara alive while the parties could work through the process of securing a more permanent solution.  Exh. A, ¶ 6.  Counsel for Barbara explained, however, that Barbara could not move forward without the necessary funding, such that she would have no choice but to seek judicial intervention if HHSC refused

even temporary funding.  Exh. A, ¶ 7.  As of the time of this filing, HHSC had not indicated a

willingness to provide such funding.  Exh. A, ¶ 8.

**D.    HHSC Constructively Denied Barbara a Fair Hearing to Contest Its Denial of the Funding Necessary to Keep Her Alive.**

HHSC constructively denied Barbara a fair hearing to contest its denial of the funding

necessary to keep her alive.  Fair hearings are statutorily required under 42 U.S.C. § 1396 and

Tex. Admin. Code §§ 353.2, 353.202, and 357.3, when HHSC denies or reduces Medicaid-

funded services to an eligible individual. OVC ¶ 46.  As this Court ruled on February 10, 2010,

in *Knowles v. Horn*, Civ. No. 3:08-cv-1492-K, 2010 WL 517591, *6 (N.D. Tex. Feb. 10, 2010),

this requirement includes a denial of GR funding.  *See id*. ("[Section 23][3] . . . added an additional

source of funding to supplement HCS funds.  This additional source of funding through state

general revenue is inextricably intertwined with the underlying Medicaid funds.  The standards

Defendants used to evaluate whether or not to deny state general revenue funds under [Section

23] therefore effectively governed whether [Plaintiff] would receive HCS funds as well.

Because the determinations made with respect to the various funding sources are inseparable, the

Medicaid fair hearing requirements apply to [Section 23] state general revenue funds.")

Although HHSC ostensibly granted Barbara a fair hearing to contest its decision to deny the

HCS funding she requested as medically necessary to her survival (OVC Exh. H), it only offered

to provide a lower level of funding during the process leading up to that fair hearing (*id*.)

Barbara could not have survived through the administrative process at such a lower level of

funding, as explained above.  *See also* OVC ¶ 8.  Furthermore, HHSC made no reference to

Barbara's request for GR funding at all, thus offering no fair hearing with respect to its

constructive denial of such funding.  OVC Ex. H.  Thus, by refusing to grant Barbara a fair

---

[3] At the time of the decision, Section 23 was known as Rider 45.

hearing to contest its constructive determination not to use state GR funds in a manner which would also trigger the expenditure of relevant Medicaid funds for the purpose of providing Barbara with the care at home she needs to survive, HHSC totally ignored this Court's unequivocal ruling on precisely this issue.

# II.
# ARGUMENT

To prevail in a motion for a temporary restraining order ("TRO") or a preliminary injunction, Plaintiff must show (1) a substantial likelihood that she will prevail on the merits; (2) a substantial threat that irreparable harm will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to Defendant; and (4) that the granting of the preliminary injunction will not disserve the public interest.  *See Janvey v, Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (preliminary injunction); *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991) (same); *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (preliminary injunction or temporary restraining order).

Plaintiff need not necessarily satisfy each of these factors to the same degree.  Rather, a court must use "a balancing-type approach in reviewing a preliminary injunction or TRO application."  *State of Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975).  When analyzing the degree of "success on the merits" necessary to justify injunctive relief, the Fifth Circuit employs a sliding scale that involves balancing the hardships associated with the issuance or denial of a preliminary injunction with the degree of likelihood of success on the merits.  *See Productos Carnic S.A. v. Central American Beef and Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980).  Indeed, a showing of even some likelihood of success will justify temporary injunctive relief.  *See, e.g.*, *Association of Taxicab Operators, USA v. City of Dallas*, 760 F. Supp. 693, 696 (N.D. Tex. 2010) ("Even some likelihood of success can be enough to support

the issuance of a preliminary injunction."); *Hooters, Inc. v. City of Texarkana, Tex.*, 897 F. Supp. 946, 949 (E.D. Tex. 1995); *Entertainment and Sports Programming Network, Inc. v. Edinburg Community Hotel, Inc.*, 735 F. Supp. 1334, 1342 (S.D. Tex. 1986).  In this case, Plaintiff has met all of the factors necessary for this Court to issue a TRO and a preliminary injunction.

**A.   There Is a Substantial Likelihood That Barbara Will Prevail on the Merits.**

    **1.   Plaintiff Will Likely Succeed in Showing That Defendant Has Violated the ADA and Section 504 of the Rehabilitation Act of 1973.**

Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C.  § 12132, prohibits public entities from discriminating against qualified persons with disabilities in providing services.  Similarly, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794(a), prohibits recipients of federal funds from discriminating against qualified persons with disabilities.  Policies and practices that have the effect of unjustifiably segregating persons with disabilities in institutions constitute prohibited discrimination under these Acts. *See, e.g.*, *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 600-03 (1999).

Moreover, under both Title II of the ADA and Section 504, public entities are required to administer services in the most integrated setting appropriate to the needs of qualified individuals with disabilities.  28 C.F.R. § 35.130(d) (implementing Title II of the ADA); 28 C.F.R. § 41.51(d) (implementing Section 504).  In *Olmstead*, 527 U.S. at 600-01, the United States Supreme Court concluded that the ADA and Section 504 mandate the integration of the disabled into community life, explaining that:

> Recognition that unjustified institutional isolation of persons with disabilities is a form of discrimination reflects two evident judgments.  First, institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life.  Second, confinement in an institution severely diminishes the everyday activities of individuals including family relations, social contracts, work options,

economic independence, educational advancement, and cultural enrichment. Dissimilar treatment correspondingly exists in this key respect. In order to receive needed medical services, persons with . . . disabilities must, because of those disabilities, relinquish participation in community life they could enjoy given reasonable accommodations, while persons without [such] disabilities can receive the medical services they need without similar sacrifice.

The Court set out three elements that a plaintiff must establish to prove a discrimination claim based on unnecessary institutionalization: "[T]he prohibition of discrimination may require placement of persons with mental disabilities in community settings rather than in institutions . . . when [1] the State's treatment professionals have determined that community placement is appropriate, [2] the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and [3] the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." *Olmstead*, 527 U.S. at 587.

HHSC's refusal to provide funding for the private-duty nursing care for Barbara at her group home at a level she requires to survive without regard to the unanimous and express views of Barbara's treating physicians that Barbara's needs cannot be met in any institutional setting reflects precisely the type of state-sponsored "unjustified institutional isolation" decried in *Olmstead* and prohibited by the ADA and Section 504 as, without the necessary funding, Barbara would have no choice but to enter into an institution where she would quickly suffer fatal consequences.

First, Barbara's treating physicians and other medical professionals agree that Barbara both is appropriate for and can benefit from a community setting. In fact, Barbara's treating physicians and other medical professionals unanimously insist that such a setting is the *only* appropriate setting and, indeed, the only setting in which Barbara can survive. OVC Exs. A-F.

10

Second, there is no dispute that Barbara wants to be in the community setting. Barbara's mother, Marguerite Harrison, actively supports her care in the community group home. OVC ¶ 40. Furthermore, Barbara's treating physicians and other medical professionals unanimously assert that Barbara's continued care in the group home is necessary to her survival. OVC Ex. A-F.

Third, community-based services can be reasonably accommodated taking into account the resources of the State and the needs of others with comparable disabilities. HHSC has provided Medicaid services to Barbara in her home for years, although her needs have recently increased. OVC ¶¶ 19, 29-31. If HHSC has cost cap concerns based on Barbara's recent increase in medical need, it can apply to the United States Secretary of Health and Human Services to amend the current cost cap. *See Knowles*, 2010 WL 517591, *4; *Grooms v. Maram*, 563 F. Supp. 2d 840, 857 (N.D. Ill. 2008) ("Illinois could act in cooperation with the federal government to achieve community-based integration which may otherwise be impeded by existing rules or requirements. . . . [T]he federal government has not denied a single waiver application in the last ten years. . . . Defendant here presents no basis to believe the federal government would deny the State's application for an amendment in this case and the court will not concoct one.") (citation omitted).

Furthermore, state GR funds are available through Section 23, a legislative enactment designed precisely to provide care in the home to individuals such as Barbara. OVC Ex. I. HHSC has offered no grounds for refusing Barbara's request for GR funding. It has simply made no response to that request at all, thus constructively denying it. It has given no information to Barbara or her medical providers or her counsel as to any formal process she or

they need to follow to secure such funding.  HHSC has simply ignored Barbara's need for such funding to survive.

In *Radaszewski v. Maram*, 383 F.3d 599 (7th Cir. 2004), the Seventh Circuit found that a state's refusal to provide services in the home in a situation similar to that of Barbara could constitute impermissible discrimination.  In that case, a disabled individual's treating physician recommended one-to-one care by a licensed nurse sixteen hours a day.  *Id*. at 603.  However, when Eric Radaszewski turned twenty-one, the state agency "took the position that if funding at [the relevant cost cap] was insufficient to provide for [Radaszewski's] care at home, then he would have to move to an institutional setting in order to receive care.  It determined that [Radaszewski] could be adequately cared for in a nursing home facility."  *Id*.  Noting that Radaszewski could clearly handle and benefit from home services (having received services there for his entire life) (*id*. at 612), the court held that, if Radaszewski would ultimately require round-the-clock nursing care or its equivalent in an institution just as he would at home, then forcing him to seek such services in an institution could constitute discrimination.  *Id*. at 611-614.  Upon remand, the district court granted summary judgment for Radaszewski.  2008 WL 2097382 (N.D. Ill. March 26, 2008).  *See also Grooms*, 563 F. Supp. 2d at 856, 863 (indicating the court's intention to grant preliminary relief to the plaintiff in a similar case and noting that: "The State has conducted no individualized analysis of the costs associated with caring for Grooms at home as opposed to in a hospital.  Thus, there is no evidence that his receipt of one-on-one care at home would be more costly than care in a hospital setting.").

Following *Radaszewski* and *Grooms*, this Court granted summary judgment to Ryan Knowles on February 10, 2010, and permanently enjoined the defendants from terminating the home-based nursing services Ryan required to survive, even though providing such services

12

might require the defendants to exceed their self-imposed cost cap and employ state GR services under Section 23 (then known as Rider 45).  *See, generally, Knowles*, 2010 WL 517291. This Court understood that Ryan needed constant medical care that the institutional setting recommended by the State was unable to provide.  *See Knowles*, 2010 WL 517291, *4 (noting, among other things, that "the Denton State School is rated 20 out of 100 on Defendants' own websites and threatened with decertification based on, among other things, failure to "provide clients' health care services" and to "secure nursing services as identified by the clients' needs.").  This Court was unwilling to condemn Ryan Knowles to the death forecast by his treating physicians if he were to suffer institutionalization.

This case is even more egregious than *Knowles*, in that HHSC here has not even performed its own medical evaluation of Barbara, has no grounds for contesting the uniform assessments of her own treating physicians and other medical professionals, and has made no recommendation of any other setting than her current group home that could keep her alive. Thus, this Court should reach the same conclusions here as it did in *Knowles*.  HHSC can comply with the ADA, Section 504, and the dictates of this Court in *Knowles* only by continuing to serve Barbara in her group home, as the undisputed medical evidence demonstrates is necessary.

2.      **Plaintiff Will Likely Succeed in Showing That HHSC Has Failed to Afford Her Due Process.**

As previously explained above, HHSC constructively denied state general revenue funds under Section 23 by ignoring entirely Barbara's request for such funds and by failing to identify any procedural mechanism for seeking access to such funds.  Furthermore, HHSC offered a fair hearing with respect to its refusal to provide HCS funding at a level Barbara requires for her survival only if Barbara could survive long enough at a lower level of funding to take advantage of that administrative process.  OVC Exh. H.  As further explained above, she cannot.  HHSC

13

thus violated relevant statutory law.  If HHSC denies or reduces Medicaid-funded services to an eligible individual, they must provide a fair hearing to that individual.  42 U.S.C. § 1396a(a)(3); Tex. Admin. Code §§ 353.2, 353.202, 357.3.  *See also, e.g.*, *Knowles*, 2010 WL 517591, *5; *Jonathan C. v. Hawkins*, 2006 U.S. Dist. Lexis 87792, at *20-21 (E.D. Tex. Dec. 5, 2006).  HHSC cannot excuse its failure to provide a fair hearing to Barbara by claiming that, as Section 23 on its face involves state GR funding as opposed to Medicaid funding, it need not provide a fair hearing upon denying such funding.  This argument fails because whether or not HHSC applies Medicaid funding through the HCS waiver program to meet Barbara's needs in her group home ostensibly depends on whether it supplements that Medicaid funding with Section 23 state GR funding, given the fact that the level of funding required exceeds the HCS cost cap.  If it uses Section 23 funding, HCS will apply Medicaid funding as well through the waiver program.  If it does not, it will not.

This Court has already expressly held as much.  In *Knowles v. Horn*, 2010 WL 517591, *6, this Court held as follows: "[Section 23] . . . added an additional source of funding to supplement HCS funds.  This additional source of funding through state general revenue is inextricably intertwined with the underlying Medicaid funds.  The standards Defendants used to evaluate whether or not to deny state general revenue funds under [Section 23] therefore effectively governed whether [Plaintiff] would receive HCS funds as well.  Because the determinations made with respect to the various funding sources are inseparable, the Medicaid fair hearing requirements apply to [Section 23] state general revenue funds."  There is no material difference between the issue thus decided by this Court in the *Knowles* case and the due process issue in the case at hand.

14

HHSC's failure to accord Barbara a fair hearing and the opportunity to appeal violates the due process provisions of the United States Constitution.  Under the United States Constitution, no state may take any action which would "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Courts have found that a mere application for Medicaid benefits, even before eligibility has been determined, qualifies as constitutionally protected property interest.  *See Hamby v. Neel*, 368 F.3d 549, 559 (6th Cir. 2004) ("[T]his Court has previously held that a social security claimant has a property interest in benefits for which he or she hopes to qualify . . . .  Since Medicaid is a program established by Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.*, we find that Plaintiffs likewise have a property interest in the [Medicaid] coverage for which they hope to qualify."); *Knowles*, 2010 WL 517591, *6 (same); *Jonathan C. v. Hawkins*, 2006 U.S. Dist. Lexis 87792, at *40 (E.D. Tex. Dec. 5, 2006) ("Courts view welfare entitlements more like 'property,' rather than a 'gratuity,' and such benefits are a matter of statutory  entitlement for persons qualified to receive them.").  Barbara has a due process right to a fair hearing and associated appeal of HHSC's refusal to provide her the level of nursing services she needs to survive.  HHSC impermissibly violated that right.

**B.      There Is a Substantial Threat That Barbara Harrison Will Suffer Immediate Irreparable Injury If the Injunction Is Not Granted.**

Barbara's treating physicians unequivocally state that Barbara requires twenty-four hour one-on-one licensed nursing care to meet her medical needs.  HHSC has not disputed these statements or offered any analysis which would controvert those statements.  Barbara's treating physicians have also stated unambiguously that Barbara's needs cannot be met in an institutional environment and that any attempt to do so would carry an extreme risk of resulting in Barbara's quick death.  HHSC has offered only a cursory dismissal of the analysis to this effect provided

15

by these treating physicians by ignoring that analysis with its denial of the required funding. Barbara cannot survive without the level of funding HHSC has actually and constructively denied.  There is thus a substantial threat that Barbara will suffer immediate and irreparable injury if Plaintiff's requested injunction is not granted.

**C.    The Threatened Harm to Barbara Outweighs the Threatened Harm the Injunction May Cause HHSC.**

Providing Barbara with the nursing services that she needs to keep her alive far outweighs any potential harm to HHSC.  As discussed fully above, HHSC's continued refusal to provide private-duty nursing services at the level Barbara needs to survive would inevitably result in significant harm to her health and welfare, almost certainly including her death.  On the other hand, continuing to serve Barbara in her group home would cause HHSC no appreciable harm or injury.  After all, HHSC has served Barbara in a community home for the past five years.  Although her needs have increased somewhat in recent months, the Texas state legislature has allocated state general revenue funds with Section 23 precisely to allow HHSC to provide care for individuals such as Barbara in the community.  Barbara has established that she needs twenty-four hours of minute-by-minute one-on-one licensed nursing care each day.  HHSC did not even take the step of having its own clinical staff member evaluate Barbara if it had any intention of disputing the unequivocal assertions of Barbara's treating physicians, as mandated by the text of Section 23.  The threatened harm to Barbara thus outweighs any threatened harm Plaintiff's requested injunction might cause HHSC.

**D.    The Granting of a Preliminary Injunction Will Not Disserve the Public Interest.**

Granting preliminary relief and a TRO requiring HHSC to provide Barbara the licensed nursing services she needs in the group home would have no detrimental effect on the public.

Providing private-duty nursing services to Barbara in the group home could have no appreciable public effect, particularly as HHSC has already provided services to Barbara in a community home for years and has access to GR funds specifically for the purpose of addressing any additional needs that might have arisen.  Furthermore, courts have held that "the public interest is served whenever state and federal laws are enforced."  *See, e.g.*, *Blue Bell Creameries, L.P. v. Denali Co., LLC*, 2008 WL 2965655, *7 (S.D. Tex. July 31, 2008) (citing cases).  This is particularly true with respect to enforcement of civil rights statutes.  *See, e.g.*, *Enyart v. National Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1167 (9th Cir. 2011) ('In enacting the ADA, Congress demonstrated its view that the public has an interest in ensuring the eradication of discrimination on the basis of disabilities.");  *Wilson v. Thomas*, 2014 WL 7405462, *3 (E.D.N.C. Dec. 23, 2014) ("[T]he public interest clearly weighs in favor of any injunction in this case. First, the public interest lies with upholding the law and having the mandates of the ADA . . . enforced.");  *Sak v. City of Aurelia, Iowa*, 832 F. Supp. 2d 1026, 1047 (N.D. Iowa 2011) ("[T]he national public interest in enforcement of the ADA 'trumps' . . . more local public interest[.]");[4] *Heather K. v. City of Mallard, Iowa*, 887 F. Supp. 1249, 1266 (N.D. Iowa 1995) ("In light of [its] legislative history, the public interest is served by enforcement of anti-discrimination provisions of Title II of the ADA.") The granting of a TRO and preliminary injunction will not disserve the public interest.

### III.
### CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that this Court enter a temporary restraining order and preliminary injunction enjoining HHSC as well as HHSC's officers, agents,

---

[4] In this instance, national and local public interest coincide as demonstrated by the enactment of the PMRA by the Texas legislature.  *See* OVC ¶ 38.

servants, employees, and attorneys, and any and all persons in active concert or participation

with them, from refusing to provide her with the 24/7 one-on-one nursing services through the

HCS Medicaid waiver program she requires to survive until  she is provided a fair hearing and

any available administrative appeals and, should the result of that hearing and those appeals be

adverse, until she has exhausted her judicial remedies.


Dated:  July 2, 2018

                                        Respectfully Submitted,

                                         /s/ Mark Whitburn

                                        **Attorneys for Plaintiffs**

                                        **Mark Whitburn**
                                        Texas Bar No. 24042144
                                        **Whitburn & Pevsner, PLLC**
                                        2000 E. Lamar Blvd., Suite 600
                                        Arlington, Texas 76006
                                        Tel: (682) 706-3750
                                        Fax: (682) 706-3789
                                        mwhitburn@whitburnpevsner.com

                                        **Garth Corbett**
                                        Texas Bar No. 04812300
                                        **Sean A. Jackson**
                                        Texas Bar No. 24057550
                                        **Disability Rights Texas**
                                        7800 Shoal Creek Blvd., Suite 171-E
                                        Austin, Texas 78757
                                        Tel: (512) 454-4816
                                        Fax: (512) 323-0902
                                        gcorbett@disabilityrightstx.org

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of July, 2018, a true and correct copy of Plaintiff's Motion

for Temporary Restraining Order and Preliminary Injunction was sent via overnight shipping and

via email to:

> Karen Ray
> Chief Counsel
> Texas Health and Human Services
> Brown-Heatly Building
> 4900 N. Lamar Blvd.
> Austin, TX 78751-2316
> Karen.Ray@hhsc.state.tx.us
>
> Russ Harris
> Texas Health and Human Services
> Brown-Heatly Building
> 4900 N. Lamar Blvd.
> Austin, TX 78751-2316
> Russ.Harris@hhsc.state.tx.us
>
> Beverly Luna
> Texas Health and Human Services
> Brown-Heatly Building
> 4900 N. Lamar Blvd.
> Austin, TX 78751-2316
> Beverly.Luna@hhsc.state.tx.us
>
> Allison Eberhart
> Texas Health and Human Services
> Brown-Heatly Building
> 4900 N. Lamar Blvd.
> Austin, TX 78751-2316
> Allison.Eberhart@hhsc.state.tx.us

                                        _/s/Mark Whitburn___
                                        Mark Whitburn

19